UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *ex rel.* J. DAVID JOHN, | ) | |
| | ) | |
| Plaintiff and Relator, | ) | |
| | ) | |
| v. | ) | 13 C 5014 |
| | ) | |
| J. DENNIS HASTERT, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Defendant J. Dennis Hastert ("Hastert") to dismiss the complaint brought by Plaintiff J. David John ("John") pursuant to Federal Rules of Civil Procedures 12(b)(1), 12(b)(6) and 9(b). For the reasons set forth below, the motion is granted. Hastert's motion to stay discovery is denied as moot.

### BACKGROUND

The following are matters alleged in the complaint. John is a resident of Burr Ridge, Illinois. Hastert is a resident of Yorkville, Illinois ("Yorkville"). Both former college wrestlers, John and Hastert knew each other from their days as student athletes at Wheaton College. From 2008 to 2012, John engaged in a variety of business ventures with companies, including ESPN and Interstate, to organize a

professional golf tournament in the Middle East and to develop a Formula One racetrack and technology park in California.

Hastert served as the 59th Speaker of the United States House of Representatives for approximately eight years. Upon retirement from United States Congress in 2007, Hastert maintained an office ("Office") in his hometown of Yorkville with three full-time administrative personnel, as is permitted under 2 U.S.C. § 31b-1 to 31b-7 (reclassified as 2 U.S.C. §§ 5125-29) (the "Statute"). The Statute states in pertinent part that upon retirement the former Speaker of the House is allowed to maintain an office for the purpose of "the administration, settlement, and conclusion of matters pertaining to or arising out of his incumbency in office as a Representative in Congress and as Speaker of the House of Representatives." Hastert was given an allowance for the Office equal to a Congressional Member's Representational Allowance for the Office's expenses. *See* 2 U.S.C. § 31b-2 (now 2 U.S.C. § 5126). He was provided with staff, including an administrative assistant and two secretaries. *See* 2 U.S.C. § 31b-5 (now 2 U.S.C. § 5128).

Also upon his retirement, Hastert was employed by the lobbying firm, Dickstein Shapiro, which lobbies for companies, including the Chicago Mercantile Exchange, The Servicemaster Company, HR Green, Polybrite and Centerpoint. John alleges that he hired Hastert to perform consulting and lobbying services for various existing and future projects. Pursuant to the contract between Hastert and John,

Hastert would receive 7 to 10 percent of the founders' equity and corresponding profits from cash flow and sale if any of the deals were successfully completed.

In 2008 and 2009, John claims he met with Hastert on three separate occasions at the Office to discuss his business ventures. John asserts that "for a significant amount of the time" Hastert used the Office and equipment for private business dealings. For instance, John contends that Hastert used vehicles registered to the Office for personal engagements and had his staff work on his private business. John claims that these staff members used the Office's telephone and email equipment in 2008, 2009, and 2010 to make arrangements for Hastert and John to travel to Saudi Arabia to discuss corporate opportunities. John also alleges that Office staff researched, prepped slide presentations, and arranged meetings between Hastert, John, and potential business contacts.

On July 12, 2013, John filed a two-count complaint alleging that Hastert: (i) violated the *qui tam* provision of the Federal False Claims Act ("FCA"), 31 U.S.C. §3729, *et seq.* (Count I); and (ii) caused violations of the FCA (Count II). As for Count I, John states that Hastert violated the FCA when he forwarded, using United States Mail, the employee wage contracts and hourly claims with knowledge that the claims were false and significant amounts of time were being spent on his personal business dealings. John also claims that Hastert violated the FCA by accepting payment from the federal government for the false submissions. In addition, John alleges in Count II that each month when Hastert signed a "verification" of the

submitted claims that Hastert knew that the Office's space, equipment, and administrative employees were being used for his private business interests.

John asks this Court to enter judgment against Hastert: (i) in favor of the United States of America for the Office, operational expenses and salaries paid for the Office during 2008, 2009, 2010, 2011, and 2012, and triple the amount of the judgment pursuant to the FCA; (ii) in favor of the United States of America, for $5,000 to $11,000 for each monthly claim or claims submitted for expenses and salaries relating to the Office in violation of the FCA; (iii) in favor of John for a percentage of the total amount of the judgment against Hastert pursuant to 31 U.S.C. § 3730, *et seq.*; and (iv) any other appropriate relief. On July 30, 2014, Hastert moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), 12(b)(6) ("Rule 12(b)(6)") and 9(b) ("Rule 9(b)"). On September 12, 2014, Hastert filed a motion to stay discovery pending the outcome of the instant motion.

## LEGAL STANDARD

Although Hastert also moves to dismiss under Rule 12(b)(1) and 12(b)(6), the only applicable legal standard this Court uses in its analysis is Rule 9(b). Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The False Claims Act "is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b)." *United States ex rel. Gross v. AIDS Research Alliance–Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). A

complaint satisfies Rule 9(b) when it alleges "the who, what, when, where, and how: the first paragraph of a newspaper story." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b), read in conjunction with Rule 8, requires that the plaintiff plead "the time, place and contents" of the purported fraud. *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 814 F. Supp. 720, 726 (N.D. Ill. 1993). "The purpose of this heightened pleading requirement is to 'force the plaintiff to do more than the usual investigation before filing his complaint.'" *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 953 (N.D. Ill. 2006) (citations and internal quotation marks omitted).

## DISCUSSION

**I. Legal Sufficiency of John's Claims Under Rule 9(b)**

Hastert posits that John's complaint should be dismissed under Rule 9(b). The heightened pleading requirement of Rule 9(b) applies to Count I and II. Both of John's claims involve allegations that Hastert defrauded the United States by, among other things, falsely certifying that his use of federal funds were only being used for matters arising out of his incumbency in office as the former Speaker of House of Representatives.

To establish civil liability under the FCA, a relator generally must prove: (i) that the defendant made a statement in order to receive money from the government; (ii) that the statement was false; and (iii) that the defendant knew the statement was false. 31 U.S.C. § 3729(a); *United States ex rel. Hill v. City of*

*Chicago*, 08 C 4540, 2014 WL 123833, at *6 (N.D. Ill. 2014). A relator must "identify specific false claims for payment or specific false statements made in order to obtain payment," *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003), and must still plead with particularity "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Wade v. Hopper*, 993 F.2d 1246, 1250 (7th Cir. 1993).

With respect to the first element, Hastert claims that the complaint is deficient under Rule 9(b) because it fails to identify, with particularity, a single false or fraudulent invoice, statement, wage contract or claim that was actually submitted to the government. Hastert also avers that the complaint fails to allege a day, month or even year that Hastert forwarded these documents through United States Mail to the United States Government. To be clear, the Seventh Circuit has found it inessential for a relator to produce the invoices (and accompanying representations) at the outset of the suit. *See United States ex re. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009). "To say fraud has been *pleaded* with particularity is not to say that it has been *proved* (nor is proof part of the pleading requirement)." *Rolls-Royce Corp.*, 570 F.3d at 855.

John's allegations that "[d]uring the time period 2008 through 2012, Mr. Hastert was paid nearly $2 million by the U.S. government . . . based upon invoices, statements and claims submitted by Mr. Hastert for the rent, telephone and

internet service, purchase of telephone, fax, and computer equipment, vehicles as well as Mr. Hastert's cell phone and these claims were sent by United States Mail to the United States Government for payment" and that each month Hastert signed a "verification of the claims" fall short of the specificity required in a FCA complaint. In his response to the instant motion, John attempts to show that he has sufficiently alleged the first paragraph of a newspaper by specifically highlighting the: (i) "Who: Mr. Hastert"; (ii) "What: false statements that his office expenses were used for the winding up of his governmental affairs"; (iii) "When: on a monthly basis from January 2008 through December 2012"; (iv) "Where: from his office in Plainfield Illinois[1]"; and (v) "How: by documents sent to the U.S. Government." However, the "who, what, when, where and how" requirements under Rule 9(b) are not satisfied simply by stating that false statements sent to the United States Government merely existed. These assertions do not convince the Court that John did more than the usual investigation before filing complaint as required under the heightened pleading requirement. What John fails to identify are certain particulars that the Court, as a reader of John's "first paragraph of a newspaper story," would expect to find, including, but not limited to: (i) when these statements were submitted (with more individualized descriptions); (ii) which department and/or person at the United States Government the statements were submitted to; and (iii) specifics about the statements' contents.

---

[1] Hastert's Office was located in Yorkville, Illinois.

As to the falsity of the statements, John fails to provide more than bare assertions as to the time, place and contents of the purported fraud. John does allege that in 2008 and 2009 he met with Hastert at the Office on three occasions to discuss business ventures, that Hastert used vehicles registered to the Office for personal business dealings, and that Hastert allowed Office personnel to work and use equipment to assist him with his private business engagements, all of which Hastert did "for a significant amount of time." Still, this is not enough—John omits specific facts necessary to meet the heightened pleading standard.

When drafting his complaint, John should have provided the Court with more allegations about the circumstances surrounding the purported fraud to satisfy Rule 9(b). *See Rolls-Royce Corp.*, 570 F.3d at 854-55 (the complaint must "show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy."). For example, as to the private meetings at the Office, the Court is unaware of when these meetings took place, how long they lasted, what the parties discussed, and why specifically these meetings violated the FCA. With respect to the vehicles, nothing is known about how Hastert used his vehicles in an unpermitted manner besides John merely stating they were used for private business purposes. John also fails to identify which members of Hastert's Office personnel assisted him with his private business dealings and when this conduct occurred.

The third element under 31 U.S.C. §§ 3729(a)(1)(A)-(B) requires that an individual act "knowingly" in presenting, causing to be presented a false claim, or making, using or causing to be used a false record or statement. Under Rule 9(b), it is sufficient to plead knowledge generally, but he must "'allege sufficient underlying facts from which a court may reasonably infer that [the defendant] acted with the requisite state of mind.'" *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1311 (Fed. Cir. 2011) (quoting *Exergen Corp. v. WalMart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009)). In certain cases when certification is a prerequisite to obtaining a government benefit, knowledge can be shown through certification of false statements. *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 824 n.4 (7th Cir. 2011) ("Violations of laws, rules, or regulations alone do not create a cause of action under the FCA. It is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit.") (internal citation omitted). These alleged false certifications or false statements must be identified with particularity. *See Gross*, 415 F.3d at 604-05 (7th Cir. 2005).

John's assertion that Hastert knew that the Office's space, equipment, and administrative employees were being used for his private business interests when he signed a "verification" of the claims is not enough to resolve the obvious pleading defects under Rule 9(b). Again, John does not reveal when exactly Hastert made these alleged false statements, what forms were used to make these statements, who

he sent the statements to, or any other particularities that would bring his claims to the pleading level necessary to survive dismissal.

## II. Original Source

In February 2010, the Chicago Tribune ("Tribune") wrote two articles about Hastert entitled "Hastert's $1 million goodbye" and "Mr. Hastert's perks." On November 14, 2012, the Tribune published another article entitled "Hastert used government office for private business." This latter article states that Hastert's Office personnel used its resources to coordinate and perform work related to Hastert's private business dealings with John. The Court acknowledges Hastert's argument that John is not the "original source" of the information as required in 31 U.S.C. §3730(e)(4)(A)-(B). Specifically, Hastert claims that John has not shown that he voluntarily provided or disclosed such information either prior to the public disclosure in the Chicago Tribune articles in November 2012 or before filing his complaint on July 12, 2013. *See* 31 U.S.C. § 3730(e)(4)(B) (to qualify as an original source "means an individual who either (i) prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (ii) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.").

While a critical issue, this Court holds that it is currently premature to adjudge the question of whether John's previous actions qualify him as the "original source" of the information.

## CONCLUSION

For the foregoing reasons, this Court grants Hastert's motion to dismiss. Hastert's motion to stay discovery is denied as moot.

_____
Charles P. Kocoras
United States District Judge

Dated:     9/18/2014