**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
(EASTERN DIVISION)**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* J. DAVID JOHN, | ) ) ) ) No. 13-cv-5014 |
| Plaintiff and Relator, | ) ) Hon. Judge Kocoras |
| v. | ) Hon. Magistrate Judge Rowland ) |
| J. DENNIS HASTERT, | ) ) |
| Defendant. | ) ) |

**J. DENNIS HASTERT'S OPPOSITION TO RELATOR'S MOTION
FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Defendant J. Dennis Hastert ("Hastert"), by his undersigned counsel, respectfully files this Opposition to Relator J. David John's ("John") Motion For Leave to File Second Amended Complaint ("SAC"). The allegations in the SAC concerning John's alleged voluntary disclosure are insufficient to demonstrate that he qualifies as an "original source" under the False Claims Act. This is because John did not voluntarily provide the Government with *all* of the information on which his amended claims are based before the public disclosure in the news media or before he filed his False Claims Act suit. Tellingly, John did not voluntarily disclose any of the new information contained in the SAC but omitted from his first Complaint, which this Court dismissed. In sum, because John cannot under any circumstances establish that he is an original source, amendment would be futile and the Court should deny John's motion for leave to amend.

District courts have broad discretion under Fed.R.Civ.P. 15(a) to deny leave to amend where there is "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies,

undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). Here, amendment would be futile because John, despite adding a new section in his SAC addressing the original source issue, still cannot qualify as an original source. In short, John failed to voluntarily disclose the additional facts alleged in the SAC. In addition, given that Hastert raised the original source defense in the first Motion to Dismiss, John could and should have provided any and all information concerning his purported original source status in his First Amended Complaint. His failure to do so and repeated amendments constitute undue delay, repeated failure to cure deficiencies and unfair prejudice to Hastert. The defects in John's alleged voluntary disclosure cannot be cured and Hastert respectfully requests that this Court deny the motion to amend with prejudice.

I.     **JOHN CANNOT QUALIFY AS AN "ORIGINAL SOURCE"**

    A.     **John Did Not Disclose All Information On Which His Claim Is Based**

Under Seventh Circuit precedent, in order to satisfy 31 U.S.C. § 3730(e)(4)(B), a relator's voluntary disclosure must provide "**all** of the information on which his claim is based" (emphasis added). *United States v. Sanford-Brown, Ltd.*, No. 12-CB-775, 2014 WL 1272098 at *4 (E.D. Wis. Mar. 27, 2014), citing *United States v. Bank of Farmington*, 166 F.3d 853, 866 (7th Cir. 1999), *overruled in part on other grounds by Glaser v. Wound Care Consultants*, 570 F.3d 907 (7th Cir. 2009). The relator bears the burden of proof in the jurisdictional analysis. *Glaser*, 570 F.3d at 913. Thus, "it is his burden to establish that he provided the information on which his claim is based to the Government." *See id.*; 31 U.S.C. § 3730(e)(4)(B); *Farmington*, 166 F.3d at 866. Here, John's Second Amended Complaint falls far short of satisfying this standard.

While John's proposed Second Amended Complaint includes slightly more alleged details of his communications with Special Agent Soika than did the Feb. 3, 2015 Affidavit, the SAC still does not indicate that John provided <u>all</u> of the information on which his claim was

based to Soika. The SAC merely alleges that John told Special Agent Soika via a telephone call that (1) John was filing a complaint against Wheaton College; (2) John had been involved in "various business ventures with Mr. Hastert from 2009 through January 2011;" (3) John had "met with Mr. Hastert regarding these ventures in the Offices of the Former Speaker" and (4) John "had knowledge that Mr. Hastert was using the federally funded offices, staff, office supplies and vehicles for his personal business ventures." SAC at ¶ 50.

The SAC does not allege that John told Soika that Hastert's use of the Offices was improper, why or how it was improper, or that John's own meetings with Hastert were improper. Notably, John did not even inform Soika that he would be filing an FCA lawsuit against Hastert; rather, he informed Soika that he was filing a complaint against Wheaton College, thus defeating the purpose of the voluntary disclosure requirement under the FCA, which is to provide information sufficient to permit the Government to investigate the allegations in order to determine whether to bring an FCA case. As described in the SAC, the conversation with Soika was vague, general, without specific details, and did not include any of the allegations that John added following the dismissal of his original complaint for lack of specificity under Rule 9(b).

For example, the Second Amended Complaint does not indicate that John provided Soika with any of the details set forth in Paragraph 61 of the SAC, which describes information reported by the Chicago Tribune that allegedly "comes directly from Mr. John" via the allegations in his complaint filed in DuPage County. The allegations in Paragraph 61 go on from page 9 to page 13 of the SAC, and include details of the specific business opportunities that John allegedly worked on with Hastert (mentioning the Formula One racetrack in California and sporting events in the Middle East, SAC at p. 10), as well as details of specific meetings and emails. But the SAC does not indicate that these allegations were provided by John to Soika.

The SAC also does not indicate that John disclosed to Soika the specific business opportunities John was working on with Hastert, including the Formula-One racetrack in Southern California and sporting events in the Middle East, both of which were discussed in the Tribune articles, or that John alleged his own meetings with Hastert were improper. It is unlikely that John would have disclosed such sensitive information to the FBI concerning John's own business activities, and the SAC does not indicate that he did so—but he was required to do so to qualify as an original source under the FCA.

Likewise, Paragraph 63 of the SAC includes further details that were allegedly "never made public until the unsealing of the original complaint in this case." For example, here John claims that the work of Hastert and his staff on the "Hastert Center" at Wheaton College was in violation of the law. But the SAC does not indicate John disclosed this information to Soika. Likewise, the SAC does not indicate that John disclosed to Soika his allegation that Hastert's employees conducted their own personal business, or that legal services and paid consultants were improper, which is alleged in Paragraph 63.

Hastert's work relating to the Hastert Center was publicly disclosed in the Chicago Tribune in 2010, prior to John's calls with the FBI. See Ex. B to Hastert's Jan. 6, 2015 Memorandum. Thus, there was no voluntary disclosure concerning the Hastert Center prior to the public disclosure. However, whether or not the additional allegations in the SAC were published in the Tribune does not change the statutory and Seventh Circuit requirement that John provided **all** of that information to the Government prior to the public disclosure, or prior to filing suit. With three complaints and supporting affidavits and documents before this Court, the record confirms John simply did not do this.

In sum, John did not voluntarily provide any information to the Government except his basic allegations in SAC at ¶ 50, which were no more than those this Court concluded failed to state a claim under Rule 9(b). Although the SAC alleges additional details not contained in the original complaint, John did not voluntarily disclose those details before filing suit, and therefore has not shown that he was the original source for those additional allegations. Thus, even if John did meet the requirements to qualify as an original source for the original Complaint, he does not meet those requirements for the SAC.

### B. John Cannot Qualify Under the Current Version of the Statute

As noted by this Court's decision, the public disclosure bar was subject to an amendment in 2010. Under the current version, to qualify as an "original source," John must establish either: (1) that *prior* to a public disclosure *he voluntarily disclosed to the Government the information on which the allegations or transactions in a claim are based*, or (2) that he has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, *and has voluntarily provided the information to the Government before filing an action under this section*. *See* 31 U.S.C. § 3730(e)(4)(B) (emphasis added); *see also Glaser*, 570 F.3d at 917.

Thus, under subparagraph (1), John must have disclosed to the Government the information that was publicly disclosed, prior to that public disclosure, or under subparagraph (2) disclosed additional information adding to the public disclosure, prior to filing suit. Here, John cannot qualify under subparagraph (1) because John, as reflected in the SAC, did not provide "**all** of the information on which his claim is based," including the information detailed in the Tribune articles (including that concerning the details of *John's own role* in Hastert's personal business such as the specific business opportunities they worked on, or the alleged role of Hastert's employees, or the alleged violations concerning the Hastert Center) (including the details of the Tribune articles listed in Paragraph 61 of the SAC), and he has provided no

evidence through the SAC that he did so. *See United States v. Sanford-Brown, Ltd*., 2014 WL 1272098 at *4. John likewise cannot qualify under subparagraph (2) because John clearly did not provide any additional information (that is, beyond what was publicly disclosed) to the Government before filing suit, and he has provided no evidence in the SAC that he did so.

John clearly did not provide to the FBI any of the new details in his SAC, such as those in paragraphs 61-63, which were absent in the original Complaint that this Court dismissed. John cannot qualify as an "original source" for the new allegations in the SAC because there is no evidence that John voluntarily provided those allegations or the underlying information on which they are based to the FBI prior to the filing of the original Complaint. There is likewise no evidence that John provided "**all** of the information on which his claim is based" -- not even all of the information underlying his original Complaint, let alone all of the information underlying the SAC, to the FBI. For these reasons it is clear that John cannot qualify as an "original source" for the SAC.

### C. John Cannot Qualify Under Either Version of the Statute

For the same reasons that John cannot qualify as an original source under the current version of the statute, John cannot qualify under the version of the statute prior to its amendment in 2010. As noted by this Court, "Under both versions, voluntary disclosure to the government is prerequisite." Slip. Op. at 25. Decisions analyzing the pre-amendment version of the statute (with reasoning that applies equally to the post-amendment version) also find that a relator who withholds significant portions of information from the government without voluntary disclosure may not qualify as an original source:

> A relator may utilize all information *voluntarily disclosed* to the government *before filing suit* in order to demonstrate direct and independent knowledge of the information on which the allegations in the qui tam complaint are based. [citation omitted]. Conversely, however, *a relator is precluded from*

6

> *attempting to establish that he or she is an original source by proffering information that was not submitted to the government* in accordance with § 3730(e)(4)(B). The *withholding of significant portions of evidence* "deprives the government of key facts necessary in its efforts to confirm, substantiate or evaluate the fraud allegations." [citation omitted]. If Relator Grynberg had significant information on which his qui tam allegations are based that he did not voluntarily provide to the government, then Grynberg failed to meet the jurisdictional requirements of an original source. *Id*.

*In re Natural Gas Royalties Qui Tam Litigation*, 467 F.Supp.2d 1117, 1145-46 (D. Wyo. 2006), *aff'd in part*, 562 F.3d 1032 (10th Cir. 2009) (emphasis added). Thus, if a relator withholds significant portions of evidence from a voluntary disclosure, that information may not be used to demonstrate original source status. The Tenth Circuit, affirming this decision, elaborated that a relator that does not voluntarily provide information may not use that information in a qui tam suit. The Tenth Circuit agreed that "if a relator does not deem information important enough to voluntarily disclose it to the government before filing suit, he should not be allowed to later rely upon it to establish his status as an original source":

> As an incentive for individuals with genuinely valuable information to come forward with that information, the original source statute provides an exception to the public disclosure bar for a relator who voluntarily provides the government with information about which he has direct and independent knowledge before filing the qui tam action. *If a relator does not voluntarily provide such information to the government, however, the purposes of the FCA weigh against allowing him to bring a qui tam action* and share in any resulting government recovery, at least where the government has already been alerted to the fraud by a public disclosure.
>
> . . .
>
> [I]t is appropriate to apply the statute's jurisdictional requirements in a manner that "encourages private individuals to come forward quickly with their information, to not dawdle when there has been a public disclosure, and to discourage persons from withholding or remaining silent about their relevant information." . . . *Permitting a relator to satisfy the pre-filing disclosure requirement by providing the government with a minimal amount of information regarding the fraud, while other information about which the relator has direct and independent information is withheld from the government until trial, would hamper the government's ability to investigate the fraud and would provide no incentive for individuals to come forward quickly with all relevant information in their possession.*

> We agree . . . that, "if a relator does not deem information important enough to voluntarily disclose it to the government before filing suit, he should not be allowed to later rely upon it to establish his status as an original source." [citation omitted]. *We thus hold that our assessment of Relator's knowledge in this case is limited to information he voluntarily provided to the government before filing suit.*

*In re Natural Gas Royalties Qui Tam Litigation*, 562 F.3d at 1044 (emphasis added).

Thus, if John did not deem information important enough to disclose to the Government before filing suit, he should not be allowed to rely upon it to establish his status as an original source. This result is sound because the vague information that John alleges that he did provide to the FBI was not enough to allow the Government to consider the merits of John's allegations reflected in the SAC. John did not even suggest a potential FCA case in his disclosure, but rather stated that he would be filing a suit against Wheaton College. SAC ¶ 50. The vague information that John alleges that he provided to the FBI was not enough to survive Rule 9(b) and likewise not enough to permit the Government to evaluate the full information that John allegedly possessed. This Court cannot permit John to establish his original source status with allegations that did not survive Rule 9(b), while also permitting him to satisfy the original source requirement with information that John never voluntarily disclosed to the government. To do so would thwart the Government's ability to investigate the alleged fraud and undermine the very purpose of the original source exception—to encourage those with valuable information to provide all of that information to the Government. As the Tenth Circuit held, the assessment of the relator's knowledge in this case should be "*limited to information he voluntarily provided to the government before filing suit." Id.*, 562 F.3d at 1044.

The principles established by the Seventh Circuit are squarely consistent with these principles. The Seventh Circuit has explained, under the prior version of the statute, that the "policy rationale is clear: The 'intent of the Act ... is to encourage private individuals who are aware of fraud against the government to bring such information forward at the earliest possible

8

time and to discourage persons with relevant information from remaining silent.' [citations omitted]. These goals are promoted by a jurisdictional rule requiring early divulgence of allegations of fraud." *Farmington*, 166 F.3d at 853.

II. **The Court Should Not Credit the Conclusory Allegations Concerning John's Phone Contacts with the FBI**

In a similar case, a district court refused to credit conclusory allegations concerning disclosure of information where those allegations were belated and obviously flawed:

> In her second declaration, Staley claimed, for the first time and in a highly conclusory fashion, that she disclosed information supporting the allegations in the Amended Complaint during interviews with the government in the fall of 1997. This statement, coming for the first time at this stage of the litigation, with no corroboration from anyone in the government, and after the relators had filed disclosure statements with no mention of any such interviews, simply cannot be credited. Staley alleges no other point at which she, or any other relator, made an adequate disclosure to the government. As such, Staley fails on this prong as well.

*Hockett v. Columbia HCA Healthcare Corp.*, 498 F.Supp.2d 25 (D.D.C. 2007).

Here, the allegations in the SAC are not only deficient for the same reasons stated above,[1] but they conflict with a sworn affidavit submitted by John to this Court. John's February 3, 2015 Response included an Affidavit presenting new information, which is evidence that may be considered by the Court at any juncture. John's Response argued that John voluntarily disclosed to the FBI Special Agent "the allegations that defendant Hastert was using the Office of the Former Speaker for Mr. Hastert's personal business," but John's Affidavit stated merely that "In September 2011, I had five or six telephone conversations [with] Special Agent Doug Soika of the Federal Bureau of Investigations" and that "on at least two of those conversations, I informed

---

[1] Likewise, in this case, John has submitted a disclosure statement to this Court without any mention of his conversations with Agent Soika. *See* September 4, 2013 Disclosure Statement.

9

S.A. Soika that J. Dennis Hastert was using the Office of the Former Speaker for Mr. Hastert's personal business in violation of federal law."

John's SAC includes allegations concerning his alleged phone calls with Special Agent Soika that are contradicted by the information in the Affidavit previously submitted to the Court. Beginning with Paragraph 49, the SAC states that John had a phone conversation with Soika on August 30, 2011, disclosing various general information, and that he also spoke to Soika on August 30 earlier in the day, and on September 19 and October 21, 2011. As noted, these allegations are directly contradicted by the sworn Affidavit previously submitted by John, which stated that he had five or six phone conversations with Soika in September 2011.

The purpose of John's new allegations appears to be an attempt to demonstrate that he spoke with Soika prior to filing suit in DuPage County, although John does not indicate the purpose of his phone calls with the FBI. Regardless, the Court need not and should not accept arguments and facts that clearly deviate from arguments and facts previously presented to the Court by the Plaintiff in a sworn Affidavit.[2]

This Court has already ruled that the information in the Affidavit was insufficient to constitute a voluntary disclosure. "Assuming arguendo that the affidavit was incorporated, the Court still finds that John has not properly alleged enough information in his affidavit to show how Hastert was violating the Former Speaker Statute when John allegedly spoke to Agent Soika prior to the filing of the lawsuit." Slip Op. at 29. The SAC is similarly deficient, merely alleging that Mr. John told Special Agent Soika via a telephone call that (1) John was filing a complaint against Wheaton College; (2) John had been involved in "various business ventures

---

[2] As the Court noted in its prior opinion, in a factual attack on subject matter jurisdiction, "the Court may also 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists.'" Slip. Op. at 27 (citation omitted).

with Mr. Hastert from 2009 through January 2011;" (3) John had "met with Mr. Hastert regarding these ventures in the Offices of the Former Speaker" and (4) John "had knowledge that Mr. Hastert was using the federally funded offices, staff, office supplies and vehicles for his personal business ventures." SAC at ¶ 50. As the Court has already ruled, this was not enough information "to show how Hastert was violating the Former Speaker Statute when John allegedly spoke to Agent Soika prior to the filing of the lawsuit." Slip. Op. at 29. As reflected in the SAC at ¶ 50, John did not communicate to Soika that John's own meetings with Hastert were improper, or in what other specific respects Hastert's use of his Offices was improper.

If John had provided detailed information to Soika, those details should have been provided in John's Affidavit. However, the Affidavit, like the SAC, does not indicate that John provided any of the specific information detailed in the Chicago Tribune articles, as set forth in Hastert's Jan. 6, 2015 Memorandum ("Mem."), concerning John's own meetings with Hastert.[3] It appeared from John's Affidavit that while John allegedly stated to the FBI that Hastert was conducting personal business through his office, John omitted any reference or explanation of *John's own role* in that personal business, including John's meetings with Hastert. While the SAC's description of the conversation with Soika in paragraph 50 does refer to John's business with Hastert, it omits any indication that John conveyed any relevant details of that business to Soika, or alleged to Soika that his own business with Hastert was improperly conducted. There is no mention in the Affidavit or the SAC of voluntary disclosure to Soika of the specific

---

[3] As set forth in Hastert's Memorandum, On November 14, 2012, the Chicago Tribune published an article entitled "Hastert used government office for private business." Mem. Ex. C. The Tribune wrote that John had met with Hastert at the Office "at least three times" to discuss private business in 2008 and 2009. *Id*. The Tribune "found that a secretary in the ex-speaker's government office used email to coordinate some of his private business meetings and travel, and conducted research on one proposed venture." *Id.* John's Affidavit gave no indication that he communicated this information to the FBI.

11

business opportunities that Hastert and John were working on, including the Formula-One racetrack in Southern California and sporting events in the Middle East, both of which were discussed in the Tribune articles (*see* Mem. Ex. C), and no indication that John alleged to Soika that these efforts were improperly conducted by himself or Hastert. Likewise, there is no mention in the Affidavit or the SAC of voluntary disclosure of information concerning personal business conducted by Hastert's *employees*.

In addition, there is no mention in the Affidavit or the SAC of discussion with Soika of Hastert's work relating to the Hastert Center at Wheaton College, which was publicly disclosed in 2010, *prior* to John's calls with the FBI. *See* Mem. Ex. B. The 2010 articles also disclosed Hastert's work as a lobbyist and corporate director for the Chicago Mercantile Exchange, as well as his work for CenterPoint Properties, PolyBrite International and Howard R. Green Co. *See* Mem. Ex. B. Thus the statement in John's February 3, 2015 Response at 4, "The Tribune made no mention of these companies or the work done for them by defendant Hastert," was false. But regardless, there was no mention in the Affidavit or SAC of any discussion or disclosure between John and Soika concerning Hastert's work for these companies.

Likewise, John's Affidavit, like the SAC, does not indicate that he provided the FBI with any of the other information in his Amended Complaint that was allegedly "well beyond" that detailed in the Tribune articles, such as the details set forth on pp. 3-4 of John's February 3, 2015 Response. There is no mention in the Affidavit or the SAC that John discussed with Soika the activities of Hastert's employees, use of legal services or Hastert's work with ESPN and the other organizations listed in the SAC. Whether or not these additional details were published in the Tribune does not change the statutory and Seventh Circuit requirement that John provided <u>all</u>

12

of that information to the Government prior to the public disclosure, or prior to filing suit. Neither the Affidavit nor the SAC indicates that he did.

Likewise, neither John's Affidavit nor the SAC indicates that he provided the FBI with any of the information underlying the conclusory allegations on p. 8 of the February 3, 2015 Response (e.g., "any business related to the conclusion of matters pertaining to the Former Speaker was completed in 2008" and "Mr. Hastert had very little time to devote to concluding the affairs of Mr. Hastert as Former Speaker."). These conclusory allegations are present in the SAC but absent from the Affidavit and the SAC does not indicate they were conveyed to Soika. Given the speculative nature of these allegations, it is unlikely that John made these allegations to the FBI, and the Affidavit and the SAC do not state that he did.

Taking the Affidavit additionally into account, it is equally clear that John cannot qualify as an "original source" for the new allegations in the SAC, because there is no evidence in the Affidavit or SAC that John provided the new allegations or the underlying information on which they are based to the FBI. It is equally clear that there is no evidence that John provided "all of the information on which his claim is based" to the FBI. For these reasons it is clear that John cannot qualify as an "original source" for the Second Amended Complaint under any circumstances. Any attempted amendment would be futile and leave to amend should be denied.

## III. CONCLUSION

Given that John's original complaint was dismissed; that John did not provide the Government with all of the information on which his amended claims are based prior to filing suit; and that John cannot establish that he is an original source for the Second Amended Complaint, these defects cannot be cured and Mr. Hastert respectfully requests that this Court grant his Opposition and deny the motion for leave to amend, with prejudice.

Dated: May 7, 2015 Respectfully submitted,

By: /s/ Justin A. Chiarodo
Justin Anselm Chiarodo
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, DC 20006-5403
chiarodoj@dicksteinshapiro.com
(202) 420-2200 (telephone)
(202) 420-2201 (facsimile)

Ethan A. Hastert (6286353)
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
ehastert@mayerbrown.com
(312) 701-7656 (telephone)
(312) 706-8368 (facsimile)

*Counsel for J. Dennis Hastert*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2015, I caused to be electronically filed the foregoing using the CM/ECF system, which will then send a notification of such filing to all registered users:

    Michael Kevin Goldberg
    Goldberg Law Group, LLC
    120 S. Riverside Plaza
    #1675
    Chicago, IL 60606-6101
    (312) 930-5600
    mgoldberg@goldberglawoffice.com

    John Joseph Muldoon, III
    Muldoon & Muldoon, PC
    10 South LaSalle Street
    Suite 2900
    Chicago, IL 60603
    (312) 739-3550
    jjm@muldoonlaw.com

I also caused a copy of the same to be served via email on the following:

    Kurt N. Lindland
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-4163
    kurt.lindland@usdoj.gov

                                            /s/ Justin A. Chiarodo
                                            Justin Chiarodo