UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. J. DAVID JOHN, | ) ) ) | |
| Plaintiff and Relator, | ) ) | |
| v. | ) ) | 13 C 5014 |
| J. DENNIS HASTERT, | ) ) ) | |
| Defendant. | ) | |

# ORDER

### CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendant J. Dennis Hastert's ("Hastert") motion to dismiss [92] Relator J. David John's ("John") complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). John brings this *qui tam* action under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, alleging that Hastert "submitted false signed and certified vouchers" to the United States Government. For the following reasons, Hastert's motion to dismiss is denied.

### BACKGROUND

On July 12, 2013, John filed his original complaint against Hastert for allegedly violating the False Claims Act ("FCA"). Subsequently, this Court has issued multiple opinions and orders, two of which thoroughly recite the facts of this case. *See United States ex rel. John v. Hastert*, 13 C 5014, 2015 WL 1006852 (N.D. Ill. Mar. 4, 2015);

*and United States ex rel. John v. Hastert*, 13 C 5014, 2014 WL 4652662 (N.D. Ill. Sept. 18, 2014). This Court's March 4, 2015 Opinion concluded that John's allegations were publicly disclosed and that the allegations were substantially similar to the public disclosures. *John*, 2015 WL 1006852, at *9. We also found that "based on the pleadings provided John was not an "original source," and therefore granted Hastert's motion to dismiss. *Id*. at *11. Thereafter, on July 23, 2015, this Court vacated its entry of judgment from March 4, 2015, reopened the case, and granted John's motion for leave to file a second amended complaint. Dkt. 55. This Court's July 23, 2015 Order stated that John "pleaded enough in the allegations of his second amended complaint about the original source issue to demonstrate that he sufficiently alerted the FBI to the likelihood of wrongdoing" to survive a Rule 12(b)(6) motion and a Rule 12(b)(1) facial challenge. *Id*., p. 7. However, we also noted that:

> As "jurisdictional flaws" are nonwaivable and can be raised at any time, any issues of fact surrounding subject matter jurisdiction—specifically to establish compliance with the voluntary disclosure requirement of 31 U.S.C. § 3730(e)(4)(B)—will best be resolved on a more complete record, with specific evidence produced about John's conversations with Soika.

*Id*., p. 10 (internal citations omitted). Presently before the Court is Hastert's motion to dismiss John's claims for lack of jurisdiction, citing limited discovery intended to address whether John qualifies as an original source.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") challenges a court's subject matter jurisdiction. A Rule 12(b)(1) motion challenges the Court's authority or competency to hear and decide the case before it. *Int'l Union of Operation Eng'rs Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 280-82 (7th Cir. 2009). "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raises the jurisdictional challenge." *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008). Thus, while the Court accepts the well pleaded factual allegations in the second amended complaint as true and draws all reasonable inferences in John's favor, John bears the burden of providing competent proof that establishes this Court's subject matter jurisdiction. *See Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014).

## DISCUSSION

The FCA "authorizes, in addition to actions by the Attorney General, *qui tam* suits by private citizens ('relators') to recover money the government paid based on false or fraudulent claims." *Carmel v. CVS Caremark Corp.*, Nos. 13 C 5930, 13 C 7683, 2015 WL 3962532, at *1 (N.D. Ill. June 26, 2015). "To ensure that *qui tam* suits are brought by individuals having '*first-hand* knowledge of fraudulent misconduct,' . . . rather than by 'opportunists trying to capitalize on publicly disclosed allegations of wrongdoing,' . . . the FCA includes a public disclosure bar." *Id.*

(quoting *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 915, 918 (7th Cir. 2009) (emphasis in original)).  In 2010, the FCA's public disclosure bar was amended by The Patient Protection and Affordable Care Act.  *Id*. at *3.  Prior to the 2010 amendment, the public disclosure bar was explicitly jurisdictional in nature, stating, "[n]o court shall have jurisdiction over an action . . . based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing . . . or from the news media, unless . . . the person brining the action is an original source of the information."  31 U.S.C. 3730(e)(4)(a)(1986).  Following the 2010 amendment, the public disclosure bar now states that "[t]he court *shall dismiss* an action or claim . . . unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . unless . . . the person brining the action is an original source of the information."  31 U.S.C. 3730 (e)(4)(a)(2010)(emphasis added).

Subsequent to the 2010 amendment, the Seventh Circuit articulated in *United States v. Sanford-Brown*, 788 F.3d 696, 703 (7th Cir. 2015), a case that expressly applied the amended 2010 version of the FCA, that "the public disclosure bar is a limitation on subject matter jurisdiction."   In reaching this conclusion, the Seventh Circuit relied on *United States ex rel. Absher v. Momence Meadows Nursing Center, Incorporated*, 764 F.3d 699, 706 (7th Cir. 2014), although *Absher* applied the pre-2010 amendment version of the public disclosure bar and questioned whether the public disclosure bar remained jurisdictional after the 2010 amendment.  More

4

recently, in *Cause of Action v. Chicago Transit Authority*, 815 F.3d 267 (7th Cir. 2016), the Seventh Circuit recognized "that the circuits that have had to determine whether the new statutory language is jurisdictional have held that the language of the 2010 amendment is not jurisdictional." *Id*. at 271 n.5 (citing *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 300 (3d Cir. 2016) (concluding that the 2010 version of the public disclosure bar is not jurisdictional); *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 810 (11th Cir. 2015) (same); *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 916 (4th Cir. 2013) (same)). Yet, the Seventh Circuit did not determine whether it recognized the new statutory language as jurisdictional explaining that the case before the court involved the earlier version of § 3730(e)(4)(A). *Id*.

For purposes of the instant motion, "regardless of whether the 2010 version of the public disclosure bar is deemed substantive or jurisdictional," the outcome is the same. *United States ex rel. Cause of Action v. Chi. Transit Auth.*, 71 F. Supp. 3d 776, 779 (N.D. Ill. 2014). Hastert argues that John's "vague and uncorroborated recollection of phone calls from over four years ago" fails to establish his status as an original source and that his lawsuit is therefore barred by the public disclosure bar. Dkt. 95, p. 1. On the other hand, John argues that the information he provided to FBI Agent Soika ("Agent Soika") during their phone conversations from August 2011 to October of 2011 "satisfies the statutorily required notice to the government for an original source." Dkt. 94, p. 6. As explained below, in order to determine whether

5

John qualifies as an original source, and therefore can avoid the public disclosure bar, the Court must first address the dispute between the parties regarding what information John *specifically* disclosed to Agent Soika regarding Hastert and the Office of the Former Speaker.

For instance, Hastert disputes whether John had *any* discussions with Agent Soika regarding Hastert and the Office of the Former Speaker. Hastert argues that John's claims are based on vague, general, ever-shifting, and uncorroborated statements that John purportedly made to Agent Soika in 2011 about Hastert using the Office of the Former Speaker for "personal business ventures." Dkt. 93, p. 1-2; Dkt. 95, p. 4. In support of this argument Hastert relies on John's deposition testimony, Dkt. 93-6, Agent Soika's official records, created contemporaneously to his August 29, 2011 phone conversation with John, Dkt. 93-3, Agent Soika's Declaration, Dkt. 93-4, and Agent Soika's Responses to Defendant's First Set of Interrogatories. Dkt. 93-5. Hastert asserts that these documents indicate that John and Agent Soika discussed John's custody dispute in Arkansas and John's concern that his privacy and civil rights were being violated, but that John never mentioned Hastert or the Office of the Former Speaker to Agent Soika. Dkt. 93, p. 1-2; Dkt. 93-3, p. 3-4; Dkt. 93-4, p. 2. John, nonetheless, contends that he informed Agent Soika of the following: (i) he was filing a lawsuit in Arkansas, which purportedly involved allegations of interference with his business relationship with Hastert; and (ii) Hastert was "running his private business ventures from the federally funded office." Dkt. 94, p. 2-3. Although John

6

is unable to specify during which conversations certain information was disclosed, *see* Dkt. 93-6, Pltf. Dep., p. 24, he maintains that he informed Agent Soika of Hastert's unlawful use of his federally funded office on three separate occasions. Dkt. 94, p. 5-6.

Based on the record currently before the Court, there is conflicting evidence regarding what, if anything at all, John said to Agent Soika about Hastert and the Office of the Former Speaker. Where a swearing contest has ensued, an evidentiary hearing is necessary. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). While a judge can resolve threshold issues such as jurisdiction, "he can do that only after conducting an evidentiary hearing." *Id*. Here, John's deposition testimony, irrespective of what Agent Soika has said, does not provide the Court with sufficient information to accurately address whether John qualifies as an "original source" as defined by 31 U.S.C. § 3730(e)(4)(B). Thus, an evidentiary hearing is necessary to determine *specifically* what information, if any, John disclosed to Agent Soika.

Hastert nevertheless argues that "even if John's testimony were to be credited, his FCA claims would still have to be dismissed," Dkt. 95, p. 6, because John's deposition testimony "characterizes" any "mention of Hastert or the Office as so fleeting that it could not, under any circumstances, meet his burden to establish jurisdiction." Dkt. 93, p. 13. According to Hastert, John's deposition testimony contends only "that he made a passing reference to Hastert's use of the Office of the Former Speaker for private business ventures in his calls with Agent Soika, yet his

FCA claims go far beyond such a minimalist accusation" and instead address "wide-ranging" misconduct. Dkt. 95, p. 5. It is certainly true that a "passing reference" would be insufficient. *See United States ex rel. Baltazar v. Warden*, 635 F.3d 866, 870 (7th Cir. 2011) ("conclusions without specifics" are insufficient; to meet the original source requirement, a relator "must know enough to make fraud a likely explanation for any overbilling . . . and under § 3730(e)(4)(B) must furnish that information to the United States, not just assert that there is a basis to be revealed eventually"). Still, Hastert's assertion that John's deposition "characterizes" his disclosures to Agent Soika as a mere "passing reference" is itself a characterization that creates a factual dispute.

For example, John testified in his deposition that he told Agent Soika that he and Hastert "had been doing business together," out of Hastert's Yorkville office, that "the things [they] were doing were run through the office of the former speaker," that "[e]verything in support of [their] deals was run through the office," and that Hastert would want John "to be quiet" about these facts "because [Hastert] was using his federally-funded office for private purposes." Dkt. 93-6, Pltf. Dep., p. 21, 33-37, 47, 57-61, 65-67. That is more than a passing reference. And while Hastert casts this testimony as "uncorroborated, vague, and ever-shifting," Dkt. 95, p. 4, even Hastert admits that these are "credibility" issues. Dkt. 93, p. 13. As recounted above, such issues require an evidentiary hearing. Accordingly, before the Court can determine whether John's disclosures to Agent Soika were sufficient to meet the requirements of

8

§ 3730(e)(4)(B), it must conduct an evidentiary hearing to determine what those disclosures were, just as Hastert himself has requested. *See* Dkt. 95, p. 5 n.1 ("Hastert requests that the Court hold an evidentiary hearing at which both witnesses can testify and be cross-examined, as is within the Court's discretion in adjudicating a factual Rule 12(b)(1) challenge.").

## CONCLUSION

For the aforementioned reasons, Hastert's motion to dismiss [92] is denied. The case is set for status on July 26, 2016 to address the scheduling of an evidentiary hearing on the "original source" issue. It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Dated: 7/6/2016